S95A1316. OWEN v. THE STATE.
S95A1317. SCOTT v. THE STATE.
(467 SE2d 325)

THOMPSON, Justice.

Frances Marie Owen and her daughter, Betty Marie Scott, were convicted of the murder of Owen's husband, Steve Owen.[1] They appeal, asserting the trial court erred in failing to grant their motions for severance. We find no error and affirm.

Viewed in a light favorable to the State, the evidence shows the following: Daryl Clayton Secoy was a friend of Betty Scott and her husband, Richard Scott. In November 1993, Secoy met the Scotts at a fast food restaurant in Riverdale, Georgia. Betty Scott asked Secoy if he could procure a "hit man" to kill her stepfather, Steve. Upon being told that the killer would earn $2,000 and a trailer, Secoy volunteered for the job.

---

[1] Owen was killed on November 17, 1993. Owen and Scott were indicted on February 22, 1994, and charged with malice murder. The case was tried on June 20, 1994, through June 24, 1994. The jury returned its verdicts on June 24, 1994, and Owen and Scott were sentenced to life in prison the same day. Both filed motions for new trial on July 5, 1994. The motions were denied on March 23, 1995; Owen and Scott filed timely notices of appeal. The cases were docketed in this Court on May 11, 1995. Owen's case was orally argued on September 12, 1995; Scott's case was submitted on briefs on July 3, 1995.

Steve and Frances Owen lived in Meriwether County. The Scotts lived on the same property, occupying a trailer behind the Owens' house. The Scotts drove Secoy to Meriwether County. The Scotts, Secoy and Frances Owen met to plan Steve's demise. Secoy said that he could rig Steve's car in such a way that it might explode when Steve started it. Owen asked whether a gun would be better; Secoy replied that it would.

A few days later, Betty Scott and Owen went to the Wal-Mart in LaGrange where Scott purchased a shotgun and shotgun shells. Scott told the salesperson she wanted the gun to give to her husband for Christmas. Owen paid for the gun with a check, telling Scott she expected to be repaid.

Betty Scott gave the gun to Secoy, who spent the next couple of nights in the Scotts' trailer. On November 17, 1993, Betty Scott brought her children to the Owens' house where they waited for the school bus. Shortly after the children went to school, Steve left the house, heading for his car. Secoy was lying in wait with the shotgun. He fired five shots at Steve, hitting him three times, and killing him.

Betty Scott urged Secoy to bury the shotgun. He wrapped it in towels and garbage bags and hid it under some pine straw not too far from the trailer. Then he removed his clothes, put them in the Scotts' washing machine, and took a shower. In the meantime, Betty Scott called the police. She told Secoy that he should lay down and pretend to be asleep when the police arrived.

Initially, Secoy told the police that he did not know what happened because he slept through the shooting. Then, he changed his story to put the blame on others. Finally, he agreed to cooperate in an investigation. Wearing a concealed recorder, he returned to Owen's house, retrieved the shotgun, and spoke with Richard Scott who said, "You need to run or we're gonna get [expletive] caught." Secoy gave the barrel of the shotgun to Richard Scott; he kept the lower receiver and gave it to the police. The police recovered the barrel of the shotgun in a subsequent search of Owen's house.

The State indicted Owen, Betty Scott, Richard Scott, and Secoy, charging them with the murder of Steve Owen. Secoy pleaded guilty and testified at trial against Owen and the Scotts. None of the defendants put on a defense. The jury found Owen and Betty Scott guilty, but was unable to reach a verdict with regard to Richard Scott.

1. The evidence was sufficient to enable any rational trier of fact to find Frances Owen and Betty Scott guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). It follows that the trial court did not err in denying Frances Owen's motion for a directed verdict of acquittal.

2. Owen asserts the trial court erred in denying her motion to sever her trial from those of the other defendants because she was

unable to cross-examine her co-defendants and elicit favorable testimony. Betty Scott asserts the denial of her motion to sever was erroneous because Richard Scott presented an antagonistic defense and she was unable to cross-examine him.

In considering whether a trial court abused its discretion in denying a severance, a defendant "must do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process." *Murphy v. State*, 246 Ga. 626, 629 (273 SE2d 2) (1980). Owen and Scott have failed to meet that burden. The number of defendants who were put on trial was not so great as to create confusion of the evidence and law. *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975). Moreover, Owen made no showing that her co-defendants would be more likely to testify if they were tried separately; nor did she show that her co-defendants' testimony would tend to exculpate her. See id. Any assertion to the contrary is pure speculation.

Betty Scott's contention that she was unable to cross-examine Richard Scott with regard to an antagonistic defense is based on the opening statement of Richard Scott's defense counsel. He claimed the evidence would show that Betty and Secoy were having an affair; and that Betty dominated Richard, who was "borderline retarded." No such evidence was introduced at trial. Of course, the opening statement was not evidence (and the trial court so instructed the jury). Thus, it cannot be said that Richard Scott introduced an antagonistic defense; or that Betty Scott was harmed by her inability to cross-examine Richard.

3. Claiming Richard Scott's defense counsel knew he could not prove the remarks he made in his opening statement, Betty Scott asserts the trial court should have granted a motion for mistrial when those remarks were made. However, Betty Scott did not move for a mistrial; she simply reiterated her request for a severance. And, there being no "manifest necessity" for a mistrial in the absence of a motion for one by Betty Scott, it was not incumbent upon the trial court to grant a mistrial sua sponte. *Bennett v. State*, 262 Ga. 149, 154 (14) (414 SE2d 218) (1992).

4. Citing *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), Owen claims the trial court erred in admitting Richard Scott's tape-recorded statement ("You need to run or we're gonna get . . . caught") into evidence because she was unable to cross-examine Scott. We disagree. " 'For the admission of a co-defendant's statements to constitute a *Bruton* violation . . . the statements *standing alone* must *clearly inculpate* the defendant. [Cits.]' (Emphasis supplied.) *United States v. De Parias*, 805 F2d 1447, 1455 (8) (11th Cir. 1986)." *Owens v. State*, 193 Ga. App. 661, 662 (3) (388 SE2d 712) (1989). The statement did not clearly inculpate Owen.

5. Betty Scott told an investigating officer that after she found Steve's body, she ran to Frances Owen's house and told her to call the police. She added, "She wouldn't, so I did." Owen asserts the trial court erred in allowing that pre-custodial statement to be read into evidence. We find no error. Simply put, the statement was not prejudicial.

6. In defining a "crime," the trial court charged the language of OCGA § 16-2-1: "A 'crime' is a violation of a statute of this state in which there is a joint operation of an act or omission to act, and intention or criminal negligence." Frances Owen asserts the charge was improper because the term "criminal negligence" implied that her guilt could depend upon her having negligently loaned Betty Scott money for the purchase of the shotgun. This assertion is without merit. "The words 'criminal negligence' are an integral part of the definition of a crime, and were properly included in the charge on [OCGA § 16-2-1]." *Smith v. State*, 238 Ga. 146, 148 (2) (231 SE2d 757) (1977). See also *Harper v. State*, 182 Ga. App. 760, 763 (7) (357 SE2d 117) (1987).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 4, 1996.

*Lee Sexton*, for appellant (case no. S95A1316).

*Knight, Stemberger & Gomez, Mark A. Gomez*, for appellant (case no. S95A1317).

*Peter J. Skandalakis, District Attorney, David S. McLaughlin, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Marla-Deen Brooks, Assistant Attorney General*, for appellee.