**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 13, 2013

# In the Court of Appeals of Georgia

A13A0450. PRESSLEY v. THE STATE.

BRANCH, Judge.

On appeal from his conviction for second-degree child cruelty, Adrian Pressley argues that the trial court erred when it admitted into evidence his videotaped statement and a picture showing the extent of the victim's permanent injuries. Pressley also argues that the court should have charged the jury on criminal negligence. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the

prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the record shows that in early November 2009, a mother noticed large and dark bruises on her ten-month-old daughter's face, buttocks, and arms. Pressley's sister, who was also present, noticed bruises and bite marks on the child's face. The child, who had no significant health problems before this time, had also become lethargic. The mother took the child to a pediatrician, who referred her to a hospital, where she was admitted, diagnosed with retinal bleeding, and remained for a week. A few days after her release, the child vomited twice at a follow-up appointment with the pediatrician. When the mother asked Pressley, her boyfriend at the time, whether he had caused the child's injuries, he denied having done so.

On November 22, the mother, child and Pressley went to Pressley's mother's house. The mother fed her daughter there and then showered. Less than five minutes after the mother left her daughter in the living room with Pressley, he carried the child to her mother in the bathroom. The child was limp and not visibly breathing, with her eyes rolled into the back of her head, such that the mother thought at first that the child was dead. The mother took the child from Pressley, who called 911. The mother

2

performed CPR according to the 911 operator's instructions, but the child began having seizures in the ambulance taking her back to the hospital, where she spent more than three weeks in intensive care. On the basis of multiple retinal hemorrhages, a doctor diagnosed the child as having been shaken. After her release, she required a feeding tube, physical and speech therapy, and leg and hand splints. As a result of the brain damage she suffered, the child cannot walk and speaks only a few words.

A police investigator interviewed Pressley twice: first at his house, where he denied having harmed the child, and then at the Columbia County sheriff's office, where he appeared to take a polygraph test. In the course of an hour-long unrecorded conversation with the polygraph examiner, who was a retired police officer and did not wear a badge or carry a gun, Pressley incriminated himself. The examiner then escorted Pressley into an interview room and left him there for an unspecified period of time.

A videotape commencing while Pressley was in the interview room and lasting through and after his interview by the police investigator shows Pressley sitting in a chair with the door open and texting on his cell phone. The examiner reentered the room with the investigator, introduced Pressley to the investigator, and closed the door. The examiner said that he wanted to be sure that he (the examiner) had told the

3

investigator what Pressley had already told the examiner: that Pressley had bitten and shaken the child "a little harder than [he] meant to," causing her injuries. When Pressley agreed to the examiner's brief account, the examiner thanked him for "telling the truth" and left the room. Pressley immediately told the investigator that Pressley had not "done the right thing." The investigator then left the room briefly, returned, and read Pressley his Miranda warnings from a preprinted form. Pressley initialed and signed the form. In the interview that followed, Pressley again confessed to harming the child on two different occasions. After the investigator again left Pressley alone, Pressley called his mother on his cell phone, repeated his confession, and told her that he was "going to plead guilty."

Pressley was charged with two counts of first-degree child cruelty arising from biting the victim on the first occasion and shaking the child on the second. Before trial, Pressley moved to suppress his videotaped statement on the ground that it had been coerced. After a *Jackson-Denno* hearing,[1] the trial court found that Pressley had given the statement freely and voluntarily and after a knowing and intelligent waiver of his rights. The videotape was played for the jury. Neither the State nor Pressley

---

[1] See *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

4

called the polygraph examiner to testify at trial.[2] A jury found Pressley guilty of two counts of child cruelty in the second degree. His motion for new trial was denied.

1. Citing the investigator's testimony that once Pressley was brought into the interview room, the investigator considered Pressley to be in custody, Pressley argues that his videotaped confirmation of his previous and unrecorded confession to the examiner should have been suppressed because the police obtained it before giving Miranda warnings. We disagree.

"Miranda warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest." (Citation and punctuation omitted.) *Sewell v. State*, 283 Ga. 558, 560-561 (2) (662 SE2d 537) (2008).

> The determination of whether one is in custody depends upon the objective circumstances attending the particular interrogation at issue, and not upon the subjective views of either the person being interrogated or the interrogating officer. *The relevant inquiry in determining whether one is in custody is how a reasonable person in the suspect's position would perceive his or her situation.*

(Citation and punctuation omitted; emphasis supplied.) *Crawford v. State*, 288 Ga. 425, 426 (2) (a) (704 SE2d 772) (2011); see also *Hardin v. State*, 269 Ga. 1, 3 (2) (494

---

[2] As a result, the videotape was the only evidence of any custodial statement made by Pressley.

5

SE2d 647) (1998) (whether investigators "have already decided that they will take the person into custody and charge them with an offense" is "not relevant" on the question whether Miranda warnings should be given so long as the person is not in custody) (footnote omitted). We will defer to a trial court's findings as to whether a defendant was in custody unless they are clearly erroneous. *Sewell*, supra at 562 (2). It is undisputed that Pressley appeared at the sheriff's office for the purpose of taking a polygraph test, that he made incriminating statements to the polygraph examiner, and that he was escorted into an interview room and remained there, unrestrained and with the door open, for some time. Pressley has not argued or shown that his original statement to the examiner was coerced, and the videotape shows that Pressley agreed without reservation to the examiner's brief account of their previous and unrecorded conversation, at which point the police investigator read Pressley his Miranda warnings and obtained his initials and signature on the form bearing the warnings before beginning the interrogation. Because the evidence thus supported a conclusion that a reasonable person would not have perceived Pressley to be in custody when he made the videotaped statement agreeing to the examiner's summary of his prior, unrecorded confession, and because Pressley confessed to the attacks again while left alone in the interview room after the Mirandized portion of his interview, we cannot

6

say that the trial court clearly erred when it admitted all of the videotaped statement. See *Crawford*, supra at 427 (2) (a), n. 5 (defendant who came to sheriff's department in his own car, "voluntarily agreed to speak with officers," and "was not handcuffed, threatened or coerced" was not in custody when he made a portion of a statement before being read his Miranda warnings); *Sewell*, supra (evidence including that defendant was not handcuffed and that door to interview area was not locked supported trial court's finding that defendant was not in custody). Compare *State v. Kendrick*, 309 Ga. App. 870, 874-876 (2) (711 SE2d 420) (2011) (affirming trial court's suppression of statements of defendant who was handcuffed, placed in patrol car, and questioned both before and after being read Miranda warnings as not clearly erroneous).

2. Pressley also argues that the trial court erred when it failed to define criminal negligence as part of its charge on second-degree child cruelty. We disagree.

OCGA § 16-2-1 (a) defines a "crime" as "a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence." Subsection (b) of the same statute defines criminal negligence as "an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby." Finally,

7

OCGA § 16-5-70 (c) defines second-degree child cruelty as "with criminal negligence causing a child under the age of 18 cruel or excessive physical or mental pain."

The record shows that Pressley submitted a written charge on second-degree child cruelty which did not include a definition of criminal negligence and that the trial court gave Pressley's charge precisely as requested. The record also shows that the trial court's charge included the definition of a crime stated in OCGA § 16-2-1 (a).

Where an appellant has failed to object to a portion of the trial court's charge to the jury, we review an error raised on appeal only for "plain error." *State v. Kelly*, 290 Ga. 29 (1) (718 SE2d 232) (2011). "On 'plain error' review, the presence of actual legal error is not enough, as the jury instruction in question must have obvious defect rather than a merely arguable defect." (Citation and punctuation omitted.) *Terry v. State*, 291 Ga. 508, 509 (2) (731 SE2d 669) (2012).

Pressley never objected to the portion of the charge concerning second-degree child cruelty, and has cited no authority on appeal for the proposition that this jury could not reach a proper result on the charges of second-degree child cruelty before it without an explanation of the term "criminal negligence." See, e.g., *Owen v. State*, 266 Ga. 312, 315 (6) (467 SE2d 325) (1996) (approving of a charge including only OCGA § 16-2-1 (a)'s definition of "crime" without suggesting that subsection (b)'s

8

definition of "criminal negligence" must be included as well). Because Pressley has failed to show an obvious defect in this portion of the charge, he cannot show plain error in the trial court's delivery of it. *Terry*, supra at 509 (2).

3. Finally, Pressley argues that the trial court erred when it admitted into evidence a photograph of the victim that shows her current medical condition and the fact that she must now be strapped into a chair to remain upright. Pressley asserts that because the photograph went only to the issue of the crime's impact on the victim, its introduction should have been reserved for the penalty phase of the trial. We disagree.

The record shows that the State sought to introduce photographs showing the victim both before and after the incidents at issue. After laying a foundation concerning the photographs' accuracy of representation of the victim's condition before and after her injuries, the State asked that they be admitted into evidence. Pressley objected to the later photograph showing the victim strapped into a chair on the ground that it was irrelevant as taken well after the dates alleged in the indictment. The State responded that the photograph went to the State's burden of showing that the physical harm caused to the child was "excessive," see OCGA 16-5-70 (b), and that the State would later link the photograph to an account of the victim's permanent disabilities, which it did. The trial court then admitted the photograph for that purpose.

9

Under OCGA § 16-5-70 (b), a person commits second-degree cruelty to children only if that person causes the victim "cruel or excessive physical or mental pain." "The determination of what is cruel or excessive physical or mental pain is to be made by the jury." (Citation and punctuation omitted.) *Sims v. State*, 234 Ga. App. 678, 679 (1) (a) (507 SE2d 845) (1998).

Pressley's objection at trial went not to the photographs' accuracy, but rather to their capacity to inflame the jury against him. As we held in *Stokes v. State*, 204 Ga. App. 586 (420 SE2d 84) (1992), however, "[p]hotographs showing the extent of injuries suffered by the victim of the alleged criminal act are relevant at the trial of the defendant, and are admissible despite allegations that they may inflame and prejudice the jury." (Citations omitted.) Id. at 586 (1). There was no error in the admission of these photographs, which showed the conditions under which the victim must live in the wake of Pressley's attack. Id. at 586-587 (1).

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*