303 Ga. 752
FINAL COPY

S18A0063. SIMPKINS v. THE STATE.

GRANT, Justice.

Appellant Damien Simpkins was found guilty of malice murder and other crimes in connection with the June 2013 shooting death of Kenneth Quarterman, Jr.[1] On appeal, Simpkins asserts that his trial counsel was

[1] The murder was committed on June 16, 2013. On June 22, 2015, Simpkins and 11 others were indicted by a Jefferson County grand jury for the malice murder of Quarterman, felony murder predicated on aggravated assault of Quarterman, five counts of possession of a firearm during the commission of a felony, aggravated assault by shooting Lewis Brown III, two counts of conspiracy to commit murder, violating the Racketeer Influenced and Corrupt Organizations Act (RICO) (OCGA § 16-14-4), and violating the Street Gang Terrorism and Prevention Act (OCGA § 16-15-4). Before trial, two of the firearm possession counts and the RICO count were dismissed. At the conclusion of a joint trial with co-defendant Rajonte McGruder held from August 3-7, 2015, a jury found both defendants guilty of all remaining counts of the indictment. The trial court sentenced Simpkins to life imprisonment for malice murder, five years consecutive each for two of the firearm counts, twenty years consecutive for aggravated assault of Brown, fifteen years consecutive for violation of the Street Gang Act, and ten years consecutive probation for conspiracy to commit murder. The other firearm count merged for sentencing purposes, see *Donaldson v. State*, 302 Ga. 671 (808 SE2d 720) (2017), and one of the conspiracy to commit murder counts was set aside. See OCGA § 16-4-8.1. The trial court purported to merge the felony murder count, though that count actually was vacated by operation of law. See *Culpepper v. State*, 289 Ga. 736, 737-738 (715 SE2d 155) (2011). Simpkins filed a timely motion for new trial on August 14, 2015, which was subsequently amended by his new counsel on September 29, 2016. A hearing was held on the motion on January 23, 2017, and the motion was denied, as amended, on May 30, 2017. Simpkins filed a timely notice of appeal on June 14, 2017. The appeal was docketed to the term of this Court beginning in December 2017 and was orally argued on December 12, 2017. We have considered a separate appeal by co-defendant

ineffective for failing to object to evidence of a non-testifying co-defendant's statements that inculpated Simpkins—also known as a *Bruton* violation. Because we find no deficiency, we affirm.

## I.

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed that late in the evening on June 15, 2013, Simpkins and several other men associated with a street gang known as "MFG" assembled in a field near Club Apollo in Louisville, Georgia. There was a block party outside the club and the area was crowded with people. Simpkins, Rajonte McGruder, Dalonte Tarver, Octavius Hickson, and Jason Williams gathered in a circle to plot an attack on a group they called the "Wrens Boys," which included the victims. There was a history of conflict between MFG and the Wrens Boys.

Tarver and Hickson said, "We gonna get those n*****s tonight." Tarver told McGruder that he was going to have to drive. Tarver told Simpkins, who had a pistol in his waistband, that Simpkins was going to have to "do it," and pointed toward several of the Wrens Boys who were coming out of the club. Simpkins, McGruder, and another individual got into

McGruder, whose convictions we also affirm today. *McGruder v. State*, 303 Ga. 588 (814 SE2d 293) (2018).

a black Dodge Charger, with McGruder driving and Simpkins sitting in the rear driver's-side seat. McGruder drove the Charger around the block and stopped in front of the Wrens Boys, and Simpkins fired several shots at the group.[2] Quarterman was shot in the head and later died. Brown was shot in the face and the hand, but survived. Someone returned fire, and a bullet struck the driver's window of the Charger, which sped away from the scene.

Although Simpkins has not challenged the sufficiency of the evidence supporting his convictions, we have independently examined the record according to our usual practice in murder cases and conclude that the evidence admitted at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Simpkins was guilty of the crimes of which he was convicted.[3] See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

II.

---

[2] Eyewitness accounts of the shooting differed with regard to whether McGruder's second passenger also fired at the Wrens Boys.

[3] For clarity's sake, the facts summarized above do not include the challenged evidence, although "in reviewing the sufficiency of the evidence, we 'consider all of the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously.'" *Dublin v. State*, 302 Ga. 60, 67-68 (805 SE2d 27) (2017) (quoting *Cowart v. State*, 294 Ga. 333, 343 (751 SE2d 399) (2013)).

Simpkins contends that his trial counsel was ineffective for failing to object to co-defendant McGruder's statements to police. In considering his claim, we first reiterate the familiar standards for ineffective assistance: to prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's performance was professionally deficient and that the deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U. S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficient performance prong, a defendant must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688. This requires a defendant to "overcome the 'strong presumption' that counsel's performance fell within a 'wide range of reasonable professional conduct,' and that counsel's decisions were 'made in the exercise of reasonable professional judgment.'" *Simmons v. State*, 299 Ga. 370, 375 (788 SE2d 494) (2016) (citations omitted). A defendant must therefore demonstrate that his counsel made a decision that "was so patently unreasonable that no competent attorney would have made it under the

circumstances at the time." *Clark v. State*, 300 Ga. 899, 903 (799 SE2d 200) (2017). To satisfy the second prong, prejudice, one must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. If a defendant fails to make a sufficient showing as to either prong, the claim of ineffective assistance of counsel fails and we need not address the other prong. See *Propst v. State*, 299 Ga. 557, 565 (788 SE2d 484) (2016).

With these principles in mind, we consider the error claimed by Simpkins, which is based on a criminal defendant's right under the Confrontation Clause "to be confronted with the witnesses against him." U. S. Const. amend. VI. Federal courts long held that a defendant's rights under the Confrontation Clause were not violated when a nontestifying co-defendant's statement inculpating the defendant was admitted at trial, so long as the jury was instructed to only consider the statement against the co-defendant who made it. See *Bruton v. United States*, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968). But in *Bruton*, the United States Supreme Court concluded that in certain cases that was asking too much of a jury. The

Supreme Court thus held that the admission of a "powerfully incriminating" statement by a nontestifying co-defendant that inculpates a defendant in the charged crimes unconstitutionally deprives that defendant of his or her Sixth Amendment right to cross-examine witnesses, even when the jury is instructed to limit its consideration of the statement to the co-defendant who made it.  391 U. S. at 126.

The Supreme Court has since explained that *Bruton* created a "narrow exception" to the "almost invariable assumption of the law that jurors follow their instructions."  *Richardson v. Marsh*, 481 U. S. 200, 206 (107 SCt 1702, 95 LE2d 176) (1987).  Indeed, "the calculus changes when confessions that do not name the defendant are at issue."  Id. at 211.  *Bruton*, therefore, should be "limited to facially incriminating confessions" and not "extended to confessions incriminating by connection."  Id. at 208-209.  *Bruton* does apply, however, when the co-defendant's statement is redacted by replacing a defendant's name with "an obvious blank, the word 'delete,' [or] a symbol," so as to "notify the jury that a name has been deleted" because statements redacted in that way still facially incriminate a defendant to whom they obviously refer.  *Gray v. Maryland*, 523 U. S. 185, 195-196 (118 SCt 1151, 140 LE2d 294) (1998).

In interpreting the principles set forth above, we have held that "'*Bruton* excludes only the statement of a nontestifying co-defendant that standing alone directly inculpates the defendant.'" *Thomas v. State*, 300 Ga. 433, 439 (796 SE2d 242) (2017) (quoting *McLean v. State*, 291 Ga. 873, 875 (738 SE2d 267) (2012)); see also *Battle v. State*, 301 Ga. 694, 700 (804 SE2d 46) (2017); *Nelms v. State*, 285 Ga. 718, 721 (681 SE2d 141) (2009). By contrast, "*Bruton* is not violated if a co-defendant's statement does not incriminate the defendant on its face and only becomes incriminating when linked with other evidence introduced at trial." *Moss v. State*, 275 Ga. 96, 98 (561 SE2d 382) (2002); see also *Battle*, 301 Ga. at 700 (citing *Sutton v. State*, 295 Ga. 350, 353 (759 SE2d 846) (2014)).

Given these guidelines, the statements Simpkins complains of did not violate the Confrontation Clause under *Bruton*. Rather than introduce McGruder's statements in written or recorded form with redactions, the State called Georgia Bureau of Investigation agent Sarah Lue to testify about her interview of McGruder after his arrest. Agent Lue's rather lengthy trial testimony included the following statements by McGruder: "he and another individual were given instructions"; "[a]nother individual was told by Dalonte Tarver that he was going to have to do it"; "the other individual got

in the back of the vehicle, who was told also to do it"; "[t]he individual who had been sitting in the back seat who had been firing shots actually made a call on a cell phone to someone to tell them where they were located and to come pick them up"; and "[t]he two individuals, one being the person who was in the back shooting, and then also the person that was unknown that picked them up said, you're riding with us, you're riding with us."

There is no question that, standing alone, McGruder's statements as conveyed by Agent Lue did not inculpate Simpkins; rather, they became incriminating only when linked to other evidence introduced later at trial. See *Moss*, 275 Ga. at 98. And by introducing the sanitized statements through Agent Lue, they were presented without obvious changes notifying the jury that a name was intentionally omitted. Cf. *Gray*, 523 U. S. at 195-196. Moreover, multiple individuals were present in the field before the shooting, some named and some unnamed, including multiple co-indictees—many of whom could have been the individual to whom McGruder was referring. Unlike in other cases where we have found *Bruton* violations, here the State did not clearly link the defendant with the omitted name contemporaneously with the introduction of the statements or

immediately afterward.  See *Ardis v. State*, 290 Ga. 58, 61-62 (718 SE2d 526) (2011); *Davis v. State*, 272 Ga. 327, 332 (528 SE2d 800) (2000).

Simpkins argues that the prosecutor's opening and closing statements heightened the possibility of a *Bruton* violation.  It is true that while describing what she expected the evidence in the case to show, the prosecutor stated that someone "comes and picks up Defendant McGruder and Defendant Simpkins."  But testimony of another witness introduced at trial—and cross-examined by Simpkins—actually named Simpkins as the person riding in the car with McGruder.  Simpkins finds error in the prosecutor's statement that "we know these details because Defendant McGruder, he tells GBI Agent Sarah Lue what he'd done."  But even that is not a clear violation; the prosecutor's explicit statement was that McGruder told Agent Lue "what *he'd* done," not what Simpkins had done.  As for the closing, the prosecutor noted that McGruder had said there were others in the car with him, and then went on to say "We don't know the other.  We know these two[,]" apparently referring to McGruder and Simpkins, the remaining defendants in the case.  But those statements are more obviously read as relying on the body of evidence of the case rather than asserting that McGruder identified Simpkins as one of his passengers; by that time the

State had, among other things, detailed testimony from another witness that Simpkins was the shooter in the back seat.[4]  For his part, Simpkins's trial attorney testified at the motion for new trial hearing that he identified the potential *Bruton* issues and worked with the prosecutor to ensure that McGruder's statements were appropriately redacted.[5]

In short, we find no deficiency in counsel's failure to object to the McGruder statements on *Bruton* grounds.  We therefore affirm.

Judgment affirmed.  All the Justices concur, except Hunstein, J., who concurs in judgment only.

---

[4] We have noted before that because the statements of an attorney are not evidence, "the appropriateness of a *Bruton* challenge in a situation of comments made in the course of the State's opening statement is subject to question." *Zackery v. State*, 286 Ga. 399, 402 (688 SE2d 354) (2010).  We do not consider that issue here.

[5] Simpkins appears to argue that the lack of an appropriate jury instruction rendered the McGruder statements more violative of *Bruton*.  But that somewhat misses the point; if the testimony at issue were truly a *Bruton* violation, a limiting instruction would not have saved it in any event.  That is, after all, the entire point of *Bruton*—that some testimony is simply so damaging that the jury cannot be expected to follow an instruction not to consider it.  Although he states in an argument heading that counsel was deficient for "failure to provide a *Bruton* instruction," because Simpkins does not "support[ ] by argument or citation of authority" any independent argument relating to jury instructions, we decline to consider that question here.  See Supreme Court Rule 22.  See *Anglin v. State*, 302 Ga. 333, 344-345 (806 SE2d 573) (2017).

Decided May 7, 2018 — Reconsideration denied June 4, 2018.

Murder. Jefferson Superior Court. Before Judge Reeves.

Ross & Pines, Andrew S. Fleischman, for appellant.

S. Hayward Altman, District Attorney, Kelly A. Jenkins, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Aimee F. Sobhani, Assistant Attorney General, for appellee.