A04A0815. DRAKE v. THE STATE.
(597 SE2d 543)

ELDRIDGE, Judge.

Sean Miguel Drake and co-defendants Terrance Kinard, Anthony Huntzinger, and Anthony Duggan were charged with kidnapping with bodily injury (Count 1), armed robbery (Count 2), and aggravated assault (Count 3). Following a jury trial, Drake was found guilty on Counts 2 and 3 and was found guilty of the lesser included offense of kidnapping on Count 1. Drake appeals from the denial of his motion for new trial. Finding no error, we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence shows that Huntzinger and the victim were friends, but had a dispute over approximately $2,000 that the victim claimed Huntzinger had

---

taken from the victim's house. The victim had threatened Huntzinger with bodily injury if Huntzinger did not return his money. On November 30, 2000, Huntzinger, Duggan, and Drake's brother encountered the victim at the local Waffle House, which resulted in a physical confrontation in the parking lot between the victim and Huntzinger, in which the victim came out the victor. After the physical altercation ended, Huntzinger sent Duggan into the Waffle House where the victim was eating in order to demand a "rematch." When a suitable location could not be found, everyone dispersed.

Huntzinger, Duggan, and Drake's brother met Kinard, Drake, and others at Kinard's grandmother's house. The group talked about seeking revenge against the victim. Later, in either the late hours of that evening or the early morning hours of the following day, Drake, Huntzinger, Duggan, and Kinard left in Huntzinger's car to look for the victim with plans to physically assault and rob him. They were armed with a rifle and a couple of handguns. The victim testified that when he arrived home, he was unable to enter his house through the garage as the automatic door opener was not operational. The victim, who did not have a house key, knocked on the front door hoping to awaken someone inside. While he was standing on the front porch, he saw Huntzinger's car drive by and continue around the corner.

Huntzinger parked behind the victim's house on a side street. Drake, Duggan, and Kinard exited the car and walked to the victim's house. All three were carrying guns. The victim, who was standing on the porch, was forced at gunpoint onto the ground and all of his money was demanded. The victim stated that all the money he had was in his pocket and turned over the $40 he had there. After being robbed at gunpoint, the victim was forced to walk to Huntzinger's car. Kinard walked in front of the victim while Duggan and Drake walked behind him. When they arrived at Huntzinger's car, the victim was hit several times and forced at gunpoint into the car's trunk.

Huntzinger, Kinard, Duggan, and Drake got back into Huntzinger's car, and drove the victim, who was locked in the trunk, to a neighboring county. In the neighboring county, the victim was removed from the trunk, and all four of the co-defendants proceeded to kick and jump upon him and hit him using their fists, sticks, and the butts of their guns. The victim testified that Huntzinger, Kinard, Duggan, and Drake all had guns and took turns pointing them at him while he was beaten. Finally, the victim was forced at gunpoint to take off his clothes and climb down into a sewer hole. A few minutes later, the victim was removed from the sewer, hit several more times, forced back into the sewer, and told not to come out. Twice a weapon was fired harmlessly at the victim. After Huntzinger, Kinard, Duggan, and Drake left, the victim exited the sewer, walked to a gas

station, and called for help. Police found small amounts of the victim's blood on the carpet in the trunk of Huntzinger's car. *Held*:

1. Drake alleges that the trial court erred in failing to direct a verdict on the armed robbery count as there was no direct evidence that Drake participated in the armed robbery of the victim. Drake argues that Kinard testified that Kinard was the only one who approached the victim on the porch and robbed him at gunpoint and that Drake and Duggan were by the side of the house.

However, the victim testified that, at the time his money was demanded, "I'm pretty sure they all had a gun pointed to me." Even if there was no direct evidence that Drake actively participated in robbing the victim at gunpoint, there was ample evidence to support Drake's guilt as a party to the crime of armed robbery.

Under OCGA § 16-2-20, a person who intentionally aids or abets the commission of the crime, or intentionally advises, encourages, hires, counsels, or procures another to commit the crime may be convicted of the crime as a party to the crime. Id. at (b) (3) and (4). Mere presence at the scene of a crime is insufficient to convict one of being a party to a crime, but criminal intent can be inferred from that person's presence, companionship, and conduct, before and after the crime was committed. *Walsh v. State*, 269 Ga. 427, 429 (1) (499 SE2d 332) (1998). Here, Drake's conduct before, during, and after the armed robbery supports the finding that he intentionally aided and abetted in the armed robbery of the victim.

Anthony Stephenson testified that he was present at Kinard's grandmother's house and heard Huntzinger, Duggan, Drake, and Kinard discussing retaliation against the victim and that they were going to beat him up. Stephenson further testified that Duggan had a handgun at such time. Huntzinger also testified that all the co-defendants discussed what had happened to him and decided to seek revenge by finding and beating up the victim. Huntzinger went on to testify that, when Kinard, Duggan, and Drake returned to his car with the victim, each of the three men was pointing their guns at the victim. Additionally, the State introduced Duggan's custodial statement in which Duggan stated that they went to the victim's house seeking revenge for the earlier fight and to rob the victim. Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Drake guilty beyond a reasonable doubt as a party to the crime of armed robbery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Drake contends the trial court erred in failing to sever his trial from that of Duggan, because Duggan testified at trial. We disagree.

At the time of trial, Kinard had previously entered a plea of guilty. Drake filed a motion to sever requesting that his trial be

severed from that of Huntzinger, which was granted by the trial court. He did not include a request in his motion that his trial be severed from that of Duggan. During the hearing on the motion to sever, Drake did not make an oral request that his trial be severed from that of Duggan. In fact, during the hearing on the motion to sever, Drake's counsel stated, "I do not see a conflict between Mr. Duggan and Mr. Drake." After Duggan elected to testify in his own defense, Drake does not direct our attention to any place in the record where he renewed his motion to sever in order to raise this issue and secure the trial court's ruling thereon. Our review of the record shows none. The right "to a severance arises only on an appropriate motion at trial." *Moore v. State*, 272 Ga. 359, 360 (3) (528 SE2d 793) (2000). Having failed to raise this issue at trial and secure a ruling thereon, this issue is waived on appeal. Id.; *York v. State*, 242 Ga. App. 281, 287 (3) (a) (i) (528 SE2d 823) (2000).

3. Drake enumerates as error the trial court's charge on conspiracy based on the ground that he was not charged with or on trial for conspiracy.

It has been repeatedly held that " '[i]t is not error to charge on the subject of conspiracy when the evidence tends to show a conspiracy, even if a conspiracy is not alleged in the indictment.' *Holmes v. State*, 272 Ga. 517, 519 (6) (529 SE2d 879) (2000)." *Edge v. State*, 275 Ga. 311, 313 (6) (567 SE2d 1) (2002); *Mangum v. State*, 274 Ga. 573, 578 (3) (d) (555 SE2d 451) (2001). "A conspiracy may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances." (Punctuation and footnote omitted.) *Parks v. State*, 275 Ga. 591, 592 (2) (571 SE2d 389) (2002). The evidence in this case supported the inference that Drake and his co-defendants planned to act together to beat up and rob the victim in retaliation for his earlier actions against Huntzinger. Thus, a charge on the law of conspiracy was authorized by the evidence.

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED MARCH 23, 2004.

*Robert Greenwald*, for appellant.
*Daniel J. Porter, District Attorney*, for appellee.