**THIRD DIVISION
DILLARD, C. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 24, 2019**

# In the Court of Appeals of Georgia

A19A0358. SHELTON v. THE STATE.

DILLARD, Chief Judge.

Following a trial by jury, Kirk Connells Shelton was convicted on one count of armed robbery and three counts of aggravated assault. Shelton appeals from these convictions, arguing that (1) the admission of his co-defendant's statement to law enforcement violated his right to confrontation; (2) his right to appeal has been denied by the omission of the co-defendant's recorded statement from the appellate record; (3) the trial judge erred by refusing to recuse himself in light of his history with Shelton's family; and (4) he received ineffective assistance of trial and appellate counsel. For the reasons set forth *infra*, we affirm in part, vacate in part, and remand to the trial court for proceedings consistent with this opinion.

Viewed in the light most favorable to the jury's guilty verdict,[1] the record shows that on July 6, 2009, the victim walked to a store to purchase cigarettes and liquor when he encountered Shelton, Michael Jefferson, and A. E. (a juvenile). While the victim was en route home in a secluded area along a railroad track, the trio physically attacked him with Shelton landing the first blow and Jefferson repeatedly punching him as he struggled with Shelton. A. E. struck the victim with a large stick, hit him, kicked him, and pulled on his backpack. The three perpetrators then made off with the victim's backpack, which contained cash, credit cards, military identification, cellular phone, wallet, a bottle of liquor, and three packs of cigarettes.

The victim returned home badly injured with multiple contusions and abrasions, and extensive damage to his eye and ear due to blunt-force trauma. Based upon his description of the perpetrators, law enforcement tracked down Shelton, Jefferson, and A. E. in the general area, finding Jefferson concealing the bottle of liquor in his shirt, and Shelton and A. E. each in possession of at least one of the stolen cigarette packs. A witness who had seen the trio and pointed law enforcement in their direction also saw them in possession of liquor, cash, and cigarettes not long

---

[1] *See, e.g., New v. State*, 327 Ga. App. 87, 88 (755 SE2d 568) (2014).

after the robbery occurred, and he retrieved the victim's credit and identification cards, which A. E. discarded in the woods.

Once apprehended, Shelton and Jefferson both gave recorded statements to law enforcement. Shelton and Jefferson were thereafter indicted and tried together, and A. E. testified against them. Shelton was convicted by the jury on all counts.

On January 6, 2010, Shelton's trial counsel—a public defender with the Lookout Mountain Office of the Public Defender—filed a motion for new trial. Thereafter, from late 2010 through 2012, Shelton filed a number of *pro se* motions in the trial court and sent letters to the court indicating that he wished to have counsel appointed and that, if he was still represented by counsel who was pursuing the motion for new trial, he was unaware of who his counsel was because he was not being provided with information or receiving any communications. Then, in February 2013, the same attorney who initially filed the 2010 motion for new trial requested that the trial court hold a hearing on the motion.

Although an order for production was issued on February 26, 2013, indicating that a motion-for-new-trial hearing would be conducted on March 19, 2013, no order

on the motion was thereafter filed.[2] Instead, the next filing in the record is a *second* order for production issued on May 17, 2016, indicating that a motion-for-new-trial hearing would be conducted on May 31, 2016. This second order was prepared by a *new* attorney from the Lookout Mountain Office of the Public Defender. Then, on June 29, 2016, this second public defender filed an amended motion for new trial, adopting and restating the arguments from the 2010 motion and adding a claim that Shelton received ineffective assistance of trial counsel.

On July 1, 2016, the trial court issued an order on the motion for new trial, indicating that on June 29, 2016, the same day the amended motion was filed, a hearing had been conducted. The trial court summarily denied Shelton's motion and concluded that he received effective assistance of trial counsel. On July 13, 2016, Shelton's second Lookout Mountain public defender filed a notice of appeal, requesting that "[n]othing should be omitted from the record on appeal," though not requesting a transcript.[3] But nothing was thereafter transmitted to this Court, and on

---

[2] The order for production was prepared by the same Lookout Mountain public defender who filed the 2010 motion for new trial, *i.e.*, Shelton's trial counsel.

[3] OCGA § 5-6-37 dictates that a notice of appeal shall set forth, *inter alia*, "a designation of those portions of the record to be omitted from the record on appeal," and "[i]n addition, the notice shall state whether or not any transcript of evidence and proceedings is to be transmitted as a part of the record on appeal." The Supreme

June 11, 2018, a notice of substitution of counsel was filed in the trial court, noting that a new attorney was replacing yet a third attorney from the Lookout Mountain Public Defender's Office.

Also included in the appellate record is a copy of a letter to the court reporter from Shelton's new counsel, who had been appointed by the Georgia Public Defender Counsel to represent Shelton on appeal. This letter, dated June 7, 2018, indicated that the trial court clerk's office had not yet transmitted the record to the Court of Appeals because the clerk's office was waiting for the filing of the June 29, 2016 motion-for-new-trial-hearing transcript. Thus, counsel requested an update on the status of preparing this transcript. The record was later certified by the trial court clerk on August 6, 2018, and the appeal was then docketed in this Court on September 10, 2018.

---

Court of Georgia has explicitly held that "[t]he specification that 'nothing' is to be omitted from the record would not [imply] that the transcript is to be included, [because] the appellant is required to state whether the transcript will be filed, in addition to designating any portion of the record to be omitted." *Steadham v. State of Ga.*, 224 Ga. 78, 80 (1) (159 SE2d 397) (1968); *accord Holman v. State*, 329 Ga. App. 393, 393-94 (1) (765 SE2d 614) (2014); *Tempo Carpet Co. v. Collectible Classic Cars of Ga., Inc.*, 166 Ga. App. 564, 564 (305 SE2d 26) (1983).

On appeal from a criminal conviction, we view the evidence in "the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent."[4] Thus, in evaluating the sufficiency of the evidence, we do not assess witness credibility or weigh the evidence, but only determine "if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt."[5] And the verdict will be upheld so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[6] With these guiding principles in mind, we turn now to Shelton's enumerations of error.

1. First, Shelton argues that his convictions should be reversed because the admission of Jefferson's recorded statement to law enforcement violated his Sixth Amendment right to confrontation when the statement implicated him and Jefferson did not testify at trial, and the trial court committed plain error in its admission of same. We disagree.

---

[4] *New*, 327 Ga. App. at 89 (punctuation omitted).

[5] *Id.* (punctuation omitted).

[6] *Id.* (punctuation omitted).

The Supreme Court of the United States held in *Bruton v. United States*[7] that the admission of a powerfully incriminating extrajudicial statement of a co-defendant who does not testify can pose a substantial threat to a defendant's rights under the Confrontation Clause of the United States Constitution,[8] and such a threat cannot be cured by a limiting instruction.[9] But *Bruton* only excludes statements by "a non-testifying co-defendant that directly inculpate the defendant, and . . . is not violated if a co-defendant's statement does not incriminate the defendant on its face

---

[7] 391 U.S. 123 (88 SCt 1620, 20 LE2d 476) (1968).

[8] *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."); *see also* Ga. Const. of 1983, Art. I, Sec. I, Para. XIV ("Every person charged with an offense against the laws of this state . . . shall be confronted with the witnesses testifying against such person.").

[9] *Bruton*, 391 U.S. at 135-37; *accord Smith v. State*, 308 Ga. App. 190, 190 (707 SE2d 135) (2011); *see Davis v. State*, 272 Ga. 327, 331 (2) (528 SE2d 800) (2000) ("[T]he Confrontation Clause is violated by the admission of a non-testifying co-defendant's statement which inculpates the defendant by referring to the defendant's name or existence, regardless of whether there are limiting instructions or of whether the incriminated defendant has made an interlocking incriminating statement." (punctuation omitted)); *White v. State*, 270 Ga. 804, 810 (4) (b) (514 SE2d 14) (1999) (same); *Hanifa v. State*, 269 Ga. 797, 803 (2) (505 SE2d 731) (1998) (same).

7

and only becomes incriminating when linked with other evidence introduced at trial."[10]

Here, the record shows that on October 27, 2009, the State provided notice that it sought to try Shelton and Jefferson together. Shelton filed a motion to sever the next day, but this motion was never ruled upon by the trial court.[11] The trial court then conducted a pre-trial hearing concerning the voluntariness of Shelton and Jefferson's statements to law enforcement, and at the conclusion of the hearing, the court asked if there were any *Bruton* issues that needed to be addressed. In response, *Jefferson's* attorney said, "[O]n the face of this there is a *Bruton* problem, but quite frankly, Your

---

[10] *Moss v. State*, 275 Ga. 96, 98 (2) (561 SE2d 382) (2002); *see Richardson v. Marsh*, 481 U.S. 200, 211 (II) (107 SCt 1702, 95 LE2d 176) (1987) (declining to extend *Bruton* beyond facially incriminating confessions of non-testifying co-defendants and holding that, under other circumstances, a limiting instruction may be appropriate); *see also Thomas v. State*, 268 Ga. 135, 137-38 (6) (485 SE2d 783) (1997) (reiterating that, for the admission of co-defendant's statements to constitute a *Bruton* violation, the statements standing alone must clearly inculpate the defendant); *Owen v. State*, 266 Ga. 312, 328 (4) (467 SE2d 325) (1996) ("For the admission of a co-defendant's statements to constitute a *Bruton* violation[,] the statements standing alone must clearly inculpate the defendant." (punctuation omitted)).

[11] *See Drake v. State*, 266 Ga. App. 463, 465 (2) (597 SE2d 543) (2004) (holding that failure to raise motion to sever at trial and to secure a ruling waived issue for appeal); *York v. State*, 242 Ga. App. 281, 287 (3) (a) (i) (528 SE2d 823) (2000) (same); *see also Moss*, 275 Ga. at 97-99 (2) (assessing potential *Bruton* violation in considering whether trial court erred in denying motion to sever).

Honor, we plan on Mr. Jefferson taking the stand, [and] that would cure the *Bruton* problem." The State then reacted with surprise to this statement:

> I certainly didn't anticipate a *Bruton* objection on Jefferson's testimony, because he indicated that the stolen property he ended up with he got from a couple of Homies, who were not the two he was charged with [(*i.e.*, Shelton and A. E.)], that he never laid a hand on the victim and he doesn't identify . . . the co-defendants, so I don't understand what the *Bruton* issue is.

Although *Jefferson's* counsel once again expressed concern that there was a *Bruton* issue with his client's statement, when specifically asked by the trial court, *Shelton's* counsel responded that there was nothing the court "need[ed] to deal with[.]" Indeed, Shelton's counsel never interjected to make his own *Bruton* objection, or any other objection, at that time. Then, prior to the introduction of the recorded statement from Jefferson, Shelton again made no objection on *Bruton* grounds. And when Jefferson decided that he would not testify, Shelton still made no *Bruton* objection.

Shelton argues that we should apply plain error to review of this enumeration of error. The State contends that, because defense counsel failed to lodge a timely objection at trial, Shelton waived this argument. But while the Supreme Court of Georgia has previously held that the failure to make a timely *Bruton* objection waives

9

the issue for appellate review,[12] those cases predate the enactment of our "new" Evidence Code.[13] Shelton, too, fails to cite or discuss the new Evidence Code or cases decided since its enactment in making his assertion of plain error. We take this opportunity, once again, to remind lawyers of "the importance of relying upon the new Evidence Code, as well as its accompanying case law, in addressing evidentiary issues arising after the new code's effetive date."[14] And under OCGA § 24-1-103 (d), courts may "tak[e] notice of plain ercrors affecting substantial rights although such errors were not brought to the attention of the court." With this standard in mind, we

[12] *See Haynes v. State*, 269 Ga. 181, 182 (2) (496 SE2d 721) (1998) ("Since there was no *Bruton* objection at trial, [appellant] is foreclosed from raising this claim on appeal."); *see also Horne v. State*, 281 Ga. 799, 804 (5) n.5 (642 SE2d 659) (2007) (declining to address *Bruton* argument on appeal when objection was not made below); *Burgess v. State*, 276 Ga. 185, 188 (5) (576 SE2d 863) (2003) ("[Appellant] contends that the admission of [the] testimony . . . was a violation of his right of confrontation under *Bruton v. United States*. . . . However, that objection was not raised at trial and cannot, therefore, be raised on appeal." (citation omitted)).

[13] *See Browder v. State*, 294 Ga. 188, 192-93 (3) & n.4 (751 SE2d 354) (2013) (holding that appellant waived *Bruton* issue for appellate review by failing to make a timely objection, but noting that his case was tried before the effective date of the new Evidence Code, which permits plain-error review).

[14] *Patch v. State*, 337 Ga. App. 233, 241 (2) n.21 (786 SE2d 882) (2016); *accord Belcher v. State*, 344 Ga. App. 729, 736 (2) (b) n.29 (812 SE2d 51) (2018).

will now consider Shelton's contention that the admission of Jefferson's statement violated his rights under the Confrontation Clause.

In the approximately 20 minutes that encompassed Jefferson's recorded statement, not once did he refer to A. E. or Shelton by name. Instead, he *repeatedly* denied having anything to do with the attack on the victim and told the officer that he obtained the whiskey he possessed from a "couple of homies" who were *not* A. E. or Shelton. And each time the officer asked Jefferson who perpetrated the attack and robbery, he refused to answer other than to deny having any involvement in attacking the victim. Moreover, when the officer directly asked Jefferson "what happened," Jefferson responded that he had nothing to tell because he was not there during the attack. Rather than implicate Shelton, Jefferson instead refused to acknowledge having any information about who attacked and robbed the victim. Accordingly, his statement did not violate *Bruton* because it did not incriminate Shelton, and thus the trial court did not err, much less plainly err, in admitting this statement.[15]

---

[15] *See Taylor v. State*, 304 Ga. 41, 45-46 (2) (816 SE2d 17) (2018) ("Because this statement only incriminates appellant when combined with other evidence presented at trial from which the jury could conclude appellant was involved in a conspiracy to commit armed robbery of the victim, the admission of this statement was not erroneous."); *see also Hanifa*, 269 Ga. at 803-04 (2) ("The fact that the jury might infer from the contents of the co-defendant's statement in conjunction with other evidence, that the defendant was involved does not make the admission of the

2. Next, Shelton argues that he was "denied his right to an appeal due to the failure of the trial court and the [S]tate to take steps to insure there was an accurate and complete transcript of the trial proceedings because the record does not include the statements given to the police by [Shelton] and his co-defendant[,] which were admitted into evidence."[16]

Within this enumeration of error, Shelton's appellate counsel explains that when the record was transmitted to him, it did not include a copy of the CD exhibit that contained the co-defendants' recorded statements. He then details making inquiries with the trial court clerk, district attorney's office, public defender's office, and other entities to inquire as to whether any of them had a copy of this exhibit. Finally, he explains that he has been in contact with the court reporter and that she was "looking for the CD." In his reply brief, filed on October 30, 2018, Shelton's counsel indicates in a footnote that since submitting the initial brief on September 21, 2018, he received a CD from the court reporter, but notes that it "still has not been added to the record of this case on appeal."

---

co-defendant's statement a violation of the Confrontation Clause.").

[16] (Emphasis omitted).

The tortured post-trial procedural history and extreme delay in this case are, to put it mildly, frustrating and disappointing, and Shelton's current appellate counsel only joined the fray recently. Nevertheless, although Shelton blames the absence of the CD from the appellate record on the trial court and the State, the State met its burden by admitting the relevant exhibit into evidence, and on appeal it is the *appellant* who bears the burden of compiling a complete record.[17]

---

[17] *See* COURT OF APPEALS R. 18 (b) ("It shall be the responsibility of the party tendering the recordings at a trial or a hearing to ensure that a copy of the recording is included in the trial court record; however, it is the burden of the appealing party to ensure that a complete record is transmitted to this Court on appeal, including the transmission of video or audio recordings."); *Chernowski v. State*, 330 Ga. App. 702, 706 (1) n.8 (769 SE2d 126) (2015) ("The transcript also definitively notes that the trial exhibits are not attached, and accordingly, no exhibits were forwarded to this Court. [The appellant], of course, bore the responsibility of compiling a complete record of what transpired below."); *Black v. State*, 309 Ga. App. 880, 882 (1) (711 SE2d 428) (2011) ("An appellant has the burden of proving trial court error by the appellate record, and must compile a complete record of what transpired in the trial court. Otherwise, there is not sufficient information for an appellate court's review and the trial court ruling enumerated as error must be upheld. When a portion of the evidence bearing upon the issues raised by the enumerations of error is not brought up in the appellate record so that this [C]ourt can make its determination from a consideration of it all, an affirmance as to that issue must result." (punctuation omitted)); *see also* CT. OF APP. R. 41 (c) ("In a motion to supplement the record, counsel shall describe the material to be supplemented; but shall not attach the supplemental materials to the motion filed with the Court unless directed to do so by the Court. If the motion is granted, the Clerk of Court will obtain the supplemental record from the trial court clerk."). *Cf. Ashley v. JP Morgan Chase Bank, N.A.*, 327 Ga. App. 232, 236 (1) (758 SE2d 135) (2014) ("[I]t is well settled that the duty to order the transcript and to monitor timely the progress of the court reporter's office

While a prior attorney filed Shelton's notice of appeal in 2016, his current counsel never filed a motion to supplement the record and has never sought to remand the case for completion of the record. Nevertheless, out of an abundance of caution, this Court contacted the trial court clerk's office to acquire a supplement to the appellate record with the complained-of exhibit.[18]

Accordingly, for all these reasons, this enumeration of error is without merit.

3. Shelton also maintains that the trial judge erred in failing to recuse himself when he had previously been involved in a serious automobile accident with his uncle, but Shelton never filed a timely motion to recuse the judge.[19] And here, Shelton

---

in transcript preparation is vested upon the appropriate appealing party." (punctuation omitted)); *Rois-Mendez v. Stamps*, 312 Ga. App. 136, 137-38 (717 SE2d 718) (2011) (discussing prior appeal's remand to the trial court for completion of the record upon motion of the appellant after appellant realized that requested exhibits were omitted from appellate record).

[18] *See* CT. OF APP. R.18 (b) ("If a copy of a recording played at a trial or a hearing is not included with the transcript designated to be transmitted in the appellate record, this Court may take whatever action is necessary in order to ensure completion of the record, including, but not limited to, issuing a show-cause order requiring an explanation of its absence.").

[19] *See Post v. State*, 298 Ga. 241, 243 (779 SE2d 624) (2015) ("To be timely, a recusal motion and accompanying affidavit must be filed and presented to the judge 'not later than five (5) days after the affiant first learned of the alleged grounds' for the judge's recusal 'and not later than ten (10) days prior to the hearing or trial which is the subject of [the] recusal.' USCR 25.1."); *Mayor & Aldermen of City of Savannah*

14

knew about the alleged automobile accident prior to trial, but waited until he had been tried, convicted, and sentenced to raise the issue.[20] Indeed, the same judge who presided over the trial also presided over the motion-for-new trial hearing, and our Supreme Court has explicitly held that under such circumstances, when a defendant does not move to recuse the trial judge from considering the motion for new trial, the issue is not properly raised and preserved.[21]

---

*v. Batson-Cook Co.*, 291 Ga. 114, 120 (2) (a) (728 SE2d 189) (2012) ("USCR 25.1 requires the motion to be filed not later than five (5) days after the affiant first learned of the alleged grounds for disqualification unless good cause be shown for failure to meet such time requirements." (punctuation omitted)).

[20] *See Battle v. State*, 298 Ga. 661, 666 (2) (a) (784 SE2d 381) (2016) ("Appellant knew about the alleged [reasons for recusal] by November 2010, but he waited until after he had been tried, convicted, and sentenced to raise the recusal issue, which he first asserted in his September 2014 amended motion for new trial. Under these circumstances, Appellant forfeited the right to raise the sua sponte recusal issue on appeal."); *State v. Hargis*, 294 Ga. 818, 821 (1) (756 SE2d 529) (2014) ("When a party learns of grounds for the potential disqualification of the judge, he must promptly move for the recusal of the judge, and if he does not, the question of disqualification is not preserved for appellate review." (footnote & citation omitted)); *In re Adams*, 292 Ga. 617, 617 (1) (740 SE2d 134) (2013) ("It is undisputed that appellant did not file a motion to recuse [the judge] from the contempt proceedings. Since appellant did not timely file a motion for [the judge] to recuse himself, the matter of recusal is waived." (citation omitted)).

[21] *See Hargis*, 294 Ga. at 821 (1) ("[T]he record shows that [appellant] *never* filed a motion to recuse, even after he had knowledge of the grounds for potential disqualification. Asserting a disqualification in a motion for new trial before the same judge who is alleged to be disqualified—without also asking the judge to recuse from

Shelton asserts in passing that we must review this enumeration for "plain error." Once again, Shelton fails to cite to the "new" Evidence Code in making this argument, and he discusses a recusal case that did not involve plain-error review. Nevertheless, the United States Court of Appeals for the Eleventh Circuit applies plain-error review to issues of recusal,[22] and we look to its precedent when considering provisions of our own Evidence Code (which are borrowed from the Federal Rules of Evidence).[23] But Shelton has failed to show on the record that the trial judge erred in not *sua sponte* recusing.

---

hearing the motion for new trial—is not a proper means of raising and preserving the issue.").

[22] *See United States v. Berger*, 375 F3d1223, 1227 (II) (B) (11th Cir. 2004) ("[B]ecause [appellant] failed to seek recusal of the district judge in the proceedings below, we review his recusal request for plain error."); *Hamm v. Mem. of Bd. of Regents of State of Fla.*, 708 F2d 647, 651 (11th Cir. 1983) (applying plain error review to issue of judge's alleged failure to sua sponte recuse).

[23] *See Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016) ("Many provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit."); *see also* Fed. R. of Evid. 103 (e) ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved.").

A trial judge has no duty to *sua sponte* recuse himself or herself in the absence of a violation of OCGA § 15-1-8 or Canon 3 (E) (1) (a),[24] and it is to this latter provision that Shelton cites. Canon 3 (E) (1) "states that judges shall disqualify themselves in any proceeding where their impartiality might reasonably be questioned"[25] And we have held that "impartiality might reasonably be questioned" means "the existence of a reasonable perception of lack of impartiality by the judge, held by a fair minded and impartial person based upon objective fact or reasonable inference; it is not based upon the perception of either interested parties or their lawyer-advocates."[26] Canon 3 (E) (1) then lists instances in which a trial judge's "impartiality might reasonably be questioned," one of which is that the judge "has a

---

[24]*Marlow v. State*, 339 Ga. App. 790, 800 (4) (792 SE2d 712) (2016) ("There is no duty for a trial judge to *sua sponte* recuse himself or herself absent a violation of a specific standard of OCGA § 15-1-8 or Canon 3 (E) (1) (a) through (c) of the Code of Judicial Conduct[.]" (punctuation omitted)); *Lemming v. State*, 292 Ga. App. 138, 141 (1) (663 SE2d 375) (2008) (same).

[25] *Hargrove v. State*, 299 Ga. App. 27, 31 (2) (681 SE2d 707) (2009).

[26] *Lacy v. Lacy*, 320 Ga. App. 739, 743 (4) (740 SE2d 695) (2013) (punctuation omitted).

17

personal bias or prejudice concerning a party[.]"[27] Shelton argues that this provision required the trial judge to recuse *sua sponte* in his case.

The extent of the evidence on the trial judge's alleged bias consists of Shelton testifying at the motion-for-new-trial hearing that in either 2002, 2003, or 2004, his uncle—who he named and said was *not* the same uncle who testified as a witness in his trial—"was hit by [the trial judge]" when the judge ran a red light, and that his uncle "wasn't killed but . . . was paralyzed[.]" Thus, Shelton felt like the judge has "something against [his] family coming into court, on the trial." But there is *no* evidence or indication that the trial judge was aware during trial or sentencing that a person with whom he was allegedly involved in a serious automobile accident some 12 to 14 years earlier was related to Shelton. Furthermore, we cannot conclude that an automobile accident that allegedly occurred more than ten years earlier between the trial judge and Shelton's uncle, who had nothing to do with the case, necessarily "supports the inescapable conclusion that a reasonable person would consider [the trial judge] to have harbored a bias that affected his ability to be impartial."[28] Thus,

_____

[27] Canon 3 (E) (1) (a).

[28] *Lacy*, 320 Ga. App. at 744 (4) (punctuation omitted); *see Marlow*, 339 Ga. App. at 801 (4) ("The allegations in this case simply are not enough reasonably to call into question the trial judge's impartiality in this case." (punctuation omitted));

18

Shelton has failed to show the trial judge committed plain error by failing to recuse himself *sua sponte*.[29]

4. Finally, Shelton argues that his trial counsel rendered ineffective assistance in a number of instances. But we do not reach the merits of his contentions because, among those arguments, Shelton asserts that his trial and motion-for-new-trial counsels were hampered by a conflict of interest when both were public defenders in the Lookout Mountain Judicial Circuit Public Defender's Office.[30] Indeed, the record,

---

*Robinson v. State*, 312 Ga. App. 736, 754-55 (7) (719 SE2d 601) (2011) (rejecting appellant's assertion that trial judge was required to *sua sponte* recuse from conducting state trial after appellant filed lawsuit in federal court against the judge and other parties, and holding that appellant had "not shown any cause for speculation that the judge was so influenced by the filing of [the] lawsuit . . . as to have infected the trial judge with a bias of such intensity that it prevented [appellant] from obtaining a fair trial").

[29] *See Gilbert v. U.S. Dep't of Justice*, 252 FedAppx 274, 276 (II) (A) (11th Cir. 2007) ("[Appellant] does not present any evidence of extrajudicial bias on the part of the district court, and therefore we conclude that no plain error occurred in the district court judge's failure to recuse herself."). *Cf. State v. Wakefield*, 324 Ga. App. 587, 593 (2) (b) (751 SE2d 199) (2013) (holding that trial judge's failure to *sua sponte* recuse himself and disclose his sexual relationship with public defender was a violation of Judicial Code of Conduct). Shelton asserts that trial counsel and motion-for-new-trial counsel failed to fully develop the record in this area, and he asserts that counsel rendered ineffective assistance by failing to raise the issue of recusal.

[30] Additionally, Shelton mentions, as an aside, that Jefferson and A. E. were also represented by attorneys from the same office.

19

as detailed *supra*, shows that Shelton's second attorney was employed with the same public defender's office as his trial counsel, and this same attorney filed an amended motion for new trial alleging ineffective assistance of counsel.

Shelton's second public defender filed the amended motion for new trial, adding the claim of ineffective assistance of counsel on the same day that the trial court held a hearing on the motion for new trial. And at that hearing, Shelton's former trial counsel was not called to testify. The State mentioned on the record that Shelton's trial counsel was "a public defender at the time of this trial" and that former trial counsel "still works in the circuit as a conflict defender[.]" Shelton's post-trial counsel agreed, saying that the State's representation was "factually correct" and that Shelton's trial counsel "was, in fact, working with us."

As we recently reiterated in *Delevan v. State*,[31] Rule 1.10 (a) of the Georgia Rules of Professional Conduct provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[ ] 1.7: Conflict of Interest[.]"[32] And

---

[31] 345 Ga. App. 46 (811 SE2d 71) (2018).

[32] *Id.* at 52 (2). *See* GA. R. OF PROF'L CONDUCT R. 3.7 (a) of the Georgia Rules of Professional Conduct found in Bar Rule 4–102 (d) ("GRPC") ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except

20

as our Supreme Court has explained, under a plain reading of this rule and its comments, "circuit public defenders working in the circuit public defender office of the same judicial circuit are akin to lawyers working in the same unit of a legal services organization and each judicial circuit's public defender's office is a 'firm' as the term is used in the rule."[33] Accordingly, if one public defender in a circuit office has an impermissible conflict of interest, then that conflict is imputed to all of the public defenders in the same circuit office.[34]

---

where: 1. the testimony relates to an uncontested issue; 2. the testimony relates to the nature and value of legal services rendered in the case; or 3. disqualification of the lawyer would work substantial hardship on the client."); GA. R. OF PROF'L CONDUCT R. 1.7 (a) ("A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client," except under certain circumstances.); Comment 2 to GA. R. OF PROF'L CONDUCT R. 1.7 ("Loyalty to a client is impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests."); Comment 6 to GA. R. OF PROF'L CONDUCT R. 1.7 ("If the propriety of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client objective advice.").

[33] *In re Formal Advisory Opinion* 10–1, 293 Ga. 397, 398 (1) (744 SE2d 798) (2013) (footnote omitted).

[34] *Delevan*, 345 Ga. App. at 52-53 (2); *In re Formal Advisory Opinion* 10–1, 293 Ga. at 399 (1).

21

And because an attorney cannot reasonably be expected to assert or argue his own ineffectiveness, it is likewise unreasonable to

> expect one member of a law firm to assert the ineffectiveness of another member. Thus, attorneys in a public defender's office are to be treated as members of a law firm for the purposes of raising claims of ineffective assistance of counsel. As such, different attorneys from the same public defender's office are not to be considered 'new' counsel for the purpose of raising ineffective assistance claims.[35]

It follows, then, that Shelton's second public defender, as well as the third public defender, should have been disqualified from representing him upon arguing that he received ineffective assistance of counsel. Indeed, Shelton's second attorney from the Lookout Mountain office only filed the *amended* motion for new trial with the ineffective-assistance claims on the morning of the hearing, and trial counsel was not called to testify.

---

[35] *Delevan*, 345 Ga. App. at 52 (2); *accord Ryan v. Thomas*, 261 Ga. 661, 662 (409 SE2d 507) (1991); *see Kennebrew v. State*, 267 Ga. 400, 402 (2) (480 SE2d 1) (1996) ("[C]ounsel, whether retained or appointed, cannot reasonably be expected to assert a claim of ineffective assistance of counsel against himself *or* any member of his firm or office[.]"). *Cf. State v. Butler*, 301 Ga. 814, 818 n.3 (804 SE2d 414) (2017) ("Because [the defendant's] fourth counsel was privately retained and not an attorney in the public defender's office, we do not treat him as one of a succession of attorneys from the same public defender's office, who are not to be considered 'new' counsel for the purpose of raising ineffective assistance claims[.]").

22

Under these particular circumstances, and keeping in mind the already prolonged appellate history of this case, we vacate the trial court's order to the extent it concluded that Shelton received effective assistance of counsel, and remand this case. On remand, the trial court must ensure that Shelton is represented by conflict-free counsel *and* conduct a new hearing on the amended motion for new trial to reconsider the assertions that Shelton received ineffective assistance of counsel.[36] Thereafter, a direct appeal may be filed from the trial court's ruling.[37]

[36] *See Kennebrew*, 267 Ga. at 402 (2) ("[W]e hold the trial court erred in addressing the merits of [the appellant's] motion for new trial on the issue of ineffective assistance of trial counsel without first appointing new counsel. That portion of the judgment is stricken, and the case is remanded for the trial court to consider the allegation of ineffective assistance under the representation of new counsel."); *Delevan*, 345 Ga. App. at 53 (3) (vacating and remanding to the trial court to appoint conflict-free post-trial counsel and conduct new hearing on motion for out-of-time appeal); *see also Ryan*, 261 Ga. at 662 (remanding for determination on the merits of ineffective assistance claim because "different attorneys from the same public defender's office are not to be considered 'new' counsel for the purpose of raising ineffective assistance claims").

[37] *See Kennebrew*, 267 Ga. at 402 (2) ("A direct appeal from such ruling may be filed[.]"); *see also Delevan*, 245 Ga. App. at 53 (3) (providing that trial court's ruling after remand was subject to direct appeal). We take this opportunity to caution Shelton that, should this case return to our Court, each enumerated error must provide specific citations to the record, citations to relevant authority, and *meaningful* argument to support any claimed errors. Otherwise, we will consider those alleged errors abandoned (as allowed by law). *See Gunn v. State*, 342 Ga. App. 615, 623-24 (3) (804 SE2d 118) (2017) (holding that appellant abandoned two claims of error when, beyond one or two case citations to "the most basic legal authority" as to the

23

Accordingly, for all these reasons, we affirm in part, vacate in part, and remand the case for further proceedings consistent with this opinion.

*Judgment affirmed in part, vacated in part, and case remanded with direction.*

*Gobeil and Hodges, JJ., concur.*

---

purpose of the legal rule at issue and the general standard applicable to claims of ineffective assistance of counsel, the appellant provided no legal authority to support his specific contentions as to how and why the trial court committed error, and noting that "mere conclusory statements are not the type of meaningful argument contemplated by our rules" (punctuation omitted)); *Dimauro v. State*, 341 Ga. App. 710, 727-28 (6) (801 SE2d 558) (2017) (holding that appellant abandoned arguments by failing to cite to record or any relevant legal authority in support, and noting that burden is on party alleging error to show it affirmatively in record); *Britain v. State*, 329 Ga. App. 689, 704 (a) (766 SE2d 106) (2014) ("[T]he majority of [appellant's] arguments in this regard have been abandoned by his failure to provide citation to authority or meaningful argument and will not be addressed."). Additionally, should Shelton or the State wish for this Court to retain the current appellate record for purposes of any potential subsequent review, they are advised to comply with the strictures of Court of Appeals Rule 42. *See* CT. OF APP. R. 42 (a) ("The Court will maintain the record of an appeal for one year after the remittitur date unless a party asks the Court in writing to maintain the record for an additional six months, and explain why. The requesting party must send an additional request fourteen days before the expiration of each six-month period to avoid the record being destroyed. The Court will not provide any notice that the record is being destroyed other than that contained in the notice of remittitur."); CT. OF APP. R. 42 (b) ("If the parties anticipate that the case will return to the Court or be appealed to the Supreme Court of the United States, the parties must notify the Clerk, in writing, to hold the record in accordance with the requirements in Rule 42 (a).").